# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **SHERRI H.,**[1] ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. 7:17CV490 |
| ) | |
| **NANCY A. BERRYHILL,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Plaintiff Sherri H. ("Sherri") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Sherri alleges that the Administrative Law Judge ("ALJ") erred by failing to properly: (1) account for Sherri's moderate impairments in social functioning and in concentration, persistence, or pace; (2) perform a function-by-function analysis; and (3) assess the consistency of her allegations with the record.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND DENYING** Sherri's Motion for Summary Judgment (Dkt. No. 14) and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 16).

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

**STANDARD OF REVIEW**

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Sherri failed to demonstrate that she was disabled under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

**CLAIM HISTORY**

Sherri filed for SSI and DIB in February 2013, claiming that her disability began on April 15, 2009, due to depression, anxiety, fibromyalgia, degenerative disc disease, arthritis, Raynaud's syndrome, and asthma. R. 372, 423. Sherri's date last insured was December 31, 2011; thus she must show that her disability began on or before this date and existed for twelve continuous months to receive DIB. R. 423; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Sherri's applications at the initial and reconsideration levels of administrative review. R. 199–210, 211–19, 222–38, 239–51. On October 11, 2016, ALJ Michael Dennard held a hearing to consider Sherri's claims for SSI and DIB. R. 132–98. Counsel represented Sherri at the hearing which included testimony from vocational expert Mark Hileman. On December 27, 2016, the ALJ entered his decision analyzing

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

2

Sherri's claims under the familiar five-step process[3] and denying her claim for benefits. R. 100–25.

The ALJ found that Sherri was insured at the time of the alleged disability onset and that she suffered from the severe impairments of degenerative disc disease of the cervical and lumbar spine, bilateral hip tendinopathy, right hip osteoarthritis, fibromyalgia, affective disorders, anxiety disorders, asthma/COPD, bilateral AC joint arthritis, (status post right shoulder surgery), and cannabis dependence.[4] R. 100, 102. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 103–105. The ALJ specifically considered listing 1.02 (major dysfunction of a joint), listing 1.04 (disorders of the spine), listing 12.02 (organic mental disorders), listing 12.04 (affective disorders), listing 12.06 (anxiety related disorders), and listing 12.09 (substance addiction disorders).[5] Id. The ALJ found that regarding her mental impairments, Sherri had mild restriction in activities of daily living, moderate difficulties in social functioning, moderate difficulties in concentration, persistence, or pace, and no episodes of decompensation. R. 104–105.

The ALJ concluded that Sherri retained the residual functional capacity ("RFC") to perform a limited range of light work. R. 105. Specifically, the ALJ found that Sherri can

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[4] Sherri was 48 years old on the date of the ALJ's decision, making her a younger person under the Act. R. 222.

[5] The Social Security Administration revised the listings for mental disorders, effective January 17, 2017. In the new rules, listing 12.09 was removed; however, the new rules were not in effect at the time of the ALJ's opinion.

occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, and sit/walk/stand for six hours in a workday. Id. Sherri can occasionally stoop, kneel, crouch, crawl, and be exposed to dust, odors, fumes, pulmonary irritants, and cold. Id. Sherri can also occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. Id. Further, Sherri is limited to performing simple, routine, repetitive tasks, but not at a production pace, can make only simple work related decisions, and can only occasionally respond to and interact with coworkers, supervisors, and the public. R. 106. The ALJ determined that Sherri had no past relevant work, but that she could perform jobs that exist in significant numbers in the national economy, such as marker, clothing bagger, and routing clerk. R. 123–24. Thus, the ALJ concluded that Sherri was not disabled. R. 124. Sherri appealed the ALJ's decision and the Appeals Council denied her request for review on September 20, 2017. R. 1–4.

## **ANALYSIS**

Sherri alleges that the ALJ failed to properly: (1) account for Sherri's moderate impairments in social functioning and in concentration, persistence, or pace and provide a proper hypothetical to the vocational expert; (2) perform a function-by-function analysis; and (3) assess the consistency of her allegations with the record.

**A. Medical History**

1. Physical Impairments

Sherri has a history of complaints of chronic back and leg pain beginning even prior to her alleged onset date, but x-rays of her lumbar spine have been largely normal, with no significant degeneration. R. 470, 755, 758, 1481. In 2012, Sherri was assessed with chronic back pain, fibromyalgia, and hip pain with osteoarthritis. R. 470, 1456–58. In April 2014, following consistent complaints of bilateral shoulder pain, Sherri underwent a right shoulder arthroscopy,

4

distal clavicle excision, and subacromial decompression. R. 837. At a follow-up visits in May and August 2014, Sherri was reported to be "doing well" and instructed to return to activities as tolerated and continue with strengthening. R. 841, 1308. In 2014, Sherri also saw providers with complaints of hip and foot pain, and in August 2014 conservative treatment was recommended for her hip pain, including physical therapy and injections. R. 1151. An x-ray of her hip showed preserved joint spaces, bilateral coxa profunda, and mild degenerative changes. R. 1152. In December 2014, she sought a second opinion regarding her foot pain, and was assessed with a short Achilles tendo, and referred to physical therapy. R. 1299, 1077.  From September through November 2015, Sherri had physical therapy for her lower extremity and back issues, but was discharged because she could not "fully commit . . . due to personal and emotional issues." R. 1251.

    2.  <u>Mental Impairments</u>

Sherri began substance abuse treatment with Blue Ridge Behavioral Health for her marijuana use in May 2013, where she reported smoking marijuana on a daily basis to help with her nerves and alleviate pain.[6] R. 646. Sherri also began individual counseling in July 2013, reporting  increasing anxiety and depression, and continued with individual treatment and outpatient group therapy through at least July 2016. R. 609–44, 665–66, 120. In October 2015, a DSM-5 Diagnosis Review was completed at Blue Ridge Behavioral Health, and Sherri was diagnosed with major depressive disorder, recurrent, generalized anxiety disorder, moderate cannabis use disorder, and obsessive-compulsive disorder. R. 994. In January 2016, she told her doctor she was not taking her medications consistently, but rather as needed, but in March 2016,

---

[6] Sherri's medical records indicate the court system sent her for counseling with Blue Ridge Behavioral Health after being found guilty of animal cruelty for having 26 cats, 6 dogs, and a pig that lacked proper vet care and feeding. R. 665.

5

she indicated she was taking her medications on a daily basis. R. 1006, 1116. However, in April 2016, she again stated she was not taking her medication on a daily basis. R. 1116.

    3.  <u>Medical Opinion Evidence</u>

In January 2014, Lewis Singer, M.D., a state agency doctor, reviewed the record and found that Sherri was capable of a limited range of medium work. R. 208–209, 218–19. In September 2014, Richard Surrusco, M.D., another state agency doctor, found that Sherri could perform a limited range of light work. R. 233.

In January 2014, state agency psychologist Kim Zweifler Ph.D., performed a records review and found severe affective, anxiety, and substance addiction disorders, with mild restrictions in activities of daily living, moderate difficulties in both maintaining social functioning and maintaining concentration, persistence, or pace, and no episodes of decompensation. R. 203–204. In September 2014, at the reconsideration level, state agency psychologist Linda Dougherty, Ph.D., also found severe affective, anxiety, and substance addiction disorders. R. 230. Dr. Dougherty concluded that Sherri was capable of gainful employment despite her mental limitations, noting that Sherri would be able to perform familiar and routine procedures, recall short and simple instructions, and be able to "maintain concentration and attention for two hour periods in order to complete an eight hour day." R. 234–36.

In April 2015, Michael W. Wolfe, M.D., Sherri's treating orthopedist, noted that Sherri "came in today basically to enlist my help in obtaining her disability" and wrote that he "agree[d] that her hip pain is disabling, and there is no simple solution for it." R. 1293.

6

### B. Mental Impairments under SSR 96-8P

Sherri argues that the ALJ failed to properly assess her mental impairments as required by SSR 96-8P.[7] See Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996). Specifically, Sherri asserts that the ALJ failed to properly assess her moderate limitations in concentration, persistence, or pace, as well as her moderate limitation in social functioning, in assessing her RFC, and thus provided an incomplete hypothetical question to the vocational expert. The Commissioner counters that the ALJ adequately accounted for Sherri's mental limitations in his RFC.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 U.S. Dist. LEXIS 153878, at *23, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 U.S. Dist. LEXIS 115150, at *24, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 U.S. Dist. LEXIS 132972, at *15-16, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe v. Colvin, 826 F.3d. 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific

---

[7] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

Here, the ALJ's discussion of Sherri's mental limitations satisfies the requirements of SSR 96-8P. The ALJ considered Sherri's testimony at the hearing and other statements, mental symptoms, and mental health treatment, and provided the narrative discussion required by the regulations. The ALJ found that Sherri had moderate difficulties in both social functioning and maintaining concentration, persistence, or pace. R. 104–105. Regarding social functioning, while the ALJ acknowledged Sherri's testimony that she had difficulty getting along with others at work due to trust issues, and suffered from anxiety, obsessive compulsive disorder, depression, post-traumatic stress disorder, and frequent panic attacks, the ALJ emphasized that Sherri frequently reported her conditions were controlled without medications by using skills learned from therapy, and that she was "active in outpatient therapy and her conditions appeared to be stable." R. 104, 122. The ALJ reviewed the medical records showing that Sherri refused to take antidepressants because "she did not like the effects." R. 119, 989. The ALJ also relied on records where Sherri reported that she was not taking her medication daily, and, instead of prescription medications, she preferred to use the skills she had learned in therapy, as well as "THC on occasion" which she felt "was better at controlling her anxiety with fewer side effects than prescription medications." R. 119, 1006, 1116. Sherri has no history of inpatient psychiatric care. R. 107, 663.

Sherri's mental status examinations frequently revealed depressed and anxious mood, but she denied suicidal/homicidal ideations, hallucinations, delusions, and paranoia, and showed normal speech, a full range of affect, linear and logical thoughts, and normal attention/concentration. R. 898–934, 1117–118, 1122, 1207–16, 941, 955, 967. The ALJ noted

that, the state agency psychological consultant had found that while Sherri could be "easily distracted and misled by others," she was still capable of gainful employment, with her "best performance" realized in a setting with only a few coworkers in a well-spaced location. R. 122.

Regarding concentration, persistence, or pace, the ALJ acknowledged Sherri's testimony that she did everything excessively, lacked organization and structure, did not like to throw things away, had difficulty sleeping, and had problems concentrating and feeling overwhelmed, and though her long-term memory was very good, she was "beginning to forget more things." R. 105. The ALJ referenced the state agency psychologist's finding that Sherri "would be able to maintain concentration and attention for two-hour periods in order to complete an eight-hour workday."[8] R. 100. The ALJ wrote:

> [Sherri's] treatment records . . . document consistent treatment for depression and anxiety and significant struggles with interpersonal relationships and concentration. However, [Sherri] has also frequently reported her conditions were controlled without medications by using skills she learned in therapy and [us]ing marijuana. As such, the [I have] limited [Sherri] to performing simple routine repetitive tasks, but at not a production pace. She can make only simple work related decisions and can only occasionally respond to and interact with coworkers, supervisors, and the public.

R. 123. The ALJ gave the state agency psychologist at the reconsideration level significant weight, noting that the opinion provided "detailed functional limitations and a thorough rationale." R. 122. The state agency psychologist indicated that Sherri's ability to complete a normal workday and workweek without interruptions from psychological symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods, was not significantly limited. R. 235. Thus, the record supports the ALJ's finding that Sherri could stay on task throughout the workday.

---

[8] This finding by the state agency physicians counters Sherri's argument that the state agency physicians "did not specifically state [she] can stay on task." Pl.'s Br. at 30, Dkt. No. 15.

The ALJ considered the medical opinions, claimant's testimony, and evidence of mental impairment, and explained the basis for his ruling, thus, the court is capable of meaningfully reviewing the RFC. See Taylor v. Astrue, No. 11-cv-32, 2012 U.S. Dist. LEXIS 11307, at *17, 2012 WL 294532, at *6 (D. Md. Jan. 31, 2012) (noting that while SSR 96-8 requires an ALJ to consider the evidence presented on a function-by-function basis, it does not require the ALJ to produce such a detailed statement in writing, but rather is sufficient if it includes a narrative discussion of the claimant's symptoms and medical source opinions); see also Monroe, 826 F.3d at 189 (emphasis added) (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)) (finding that "[a] necessary *predicate* to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.").

Sherri also argues that "the ALJ's hypothetical questions did not properly address [her] moderate limitations in concentration, persistence, or pace" including her ability to sustain work over the course of an eight hour workday. Pl.'s Br. at 25, Dkt. No. 15. In Mascio, the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" 780 F.3d at 638 (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). The Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that without such an explanation, remand was necessary. Id.

10

This is not a situation like Mascio, where the ALJ summarily concluded that a limitation to simple, unskilled work accounts for the claimant's moderate impairment in concentration, persistence, or pace without further analysis. Here, the ALJ accounted for Sherri's moderate impairments in social functioning and in maintaining concentration, persistence, or pace, in both his hypothetical question to the VE and the RFC finding in his ruling. The ALJ's hypothetical question and RFC assessment included limitations of simple, routine, repetitive tasks, not at a production pace, only simple work related decisions, and only occasionally respond to and interact with coworkers, supervisors, and the public. R. 106, 190. In his testimony, the vocational expert specifically addressed the issue of production pace work, noting that he rejected jobs where if a workers slows his work pace, he will affect the work of others. R. 192. Unlike the claimant in Mascio, the medical evidence here supports the ALJ's conclusion that, despite her moderate limitations, Sherri is capable of performing the basic mental demands of light work, with the specified accommodations. Indeed, Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. 780 F.3d 638. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision, especially where, as the ALJ held in Mascio, a claimant's concentration, persistence, or pace limitation does not affect the ability to perform simple, unskilled work. The ALJ's responsibility to highlight the evidence of record that supports his conclusion was further emphasized in Monroe, where the Court of Appeals found that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and "specific application" of the law to the record. See Monroe, 826 F.3d at 189 (emphasis added) (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)).

This case is analogous to Sizemore v.Berryhill, 878 F.3d 72 (4th Cir. 2017), where the Fourth Circuit Court of Appeals found that substantial evidence supported the ALJ's determination that the claimant, who had moderate difficulties in social functioning and in concentration, persistence, or pace, would be able to stay on task while working in low stress non-production jobs with no public contact. Id. at 79. In Sizemore, the ALJ relied on findings from state agency psychologists[9] who had found he was capable of maintaining attention for at least two hours at a time, and thus could perform basic, routine tasks on a sustained basis. Id. at 80–81. The Court of Appeals concluded that the opinions of these state agency doctors, "provided substantial support for the ALJ's finding that, despite Sizemore's overall moderate difficulties with concentration, persistence, or pace, he would nonetheless be able to *stay on task* while performing "simple one, two-step tasks," as long as he was "working in low stress non-production jobs with no public contact." Id. citing Mascio, 780 F.3d at 638. Similarly, here, the ALJ relied on state agency psychologist Dr. Dougherty,[10] who found that Sherri could perform simple work, follow familiar and routine procedures, recall short and simple instruction and "maintain concentration and attention for two hour periods in order to complete and eight hour day." R. 234–35.

In addition to relying on Dr. Dougherty, the ALJ extensively discussed Sherri's medical records and treatment notes. Thus, this court is not "left to guess about how the ALJ arrived at [her] conclusions."[11]  Mascio, 780 F.3d at 637; see also Massey v. Colvin, No. 1:13-cv-965,

---

[9] In Sizemore Dr. Rasheda Ahsanuddin performed a psychiatric consultative evaluation and Dr. Monica King performed a records review. Id. at 75, 77.

[10] The ALJ gave Dr. Dougherty's opinion significant weight. R. 122.

[11] Sherri argues that this case is similar to Rice v. Comm'r, Soc. Sec. Admin., No. CV SAG-16-2582, 2017 WL 2274947, at *3 (D. Md. May 24, 2017), where the court remanded to the Commissioner, noting the cursory analysis by the ALJ, which "entirely fails to address Ms. Rice's ability to sustain work over an eight-hour workday."

2015 U.S. Dist. LEXIS 79708, at *20, 2015 WL 3827574, at *7 (M.D.N.C. June 19, 2015); Hutton v. Colvin, No. 2:14-cv-63, 2015 U.S. Dist. LEXIS 77846, at *8, 2015 WL 3757204, at *3 (N.D. W. Va., June 16, 2015).

### C. Function-by-Function Analysis

Sherri argues that the ALJ erred by failing to perform a proper function-by-function analysis of her impairments. Sherri asserts that the ALJ found she had multiple severe impairments, "but did not determine on a function-by-function basis how they affect her ability to work." Pl.'s Br. at 33, Dkt. No. 15. Specifically, Sherri complains that the ALJ failed to make specific findings regarding her "inability to maintain a static work posture, her significant difficulties using her arms and hands, or her need to lie down and rest during the day." Id. These arguments amount to disagreements with the ALJ's RFC determination and essentially ask the court to reweigh the evidence.

A function-by-function analysis requires the ALJ to develop an adequate RFC which accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8p; see also Monroe, 826 F.3d at 189 (emphasizing that an ALJ needs to provide an explicit explanation linking medical evidence listed in the decision to his ultimate findings). The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity

---

However, here, the ALJ provided a sufficient analysis, including discussing her medical records and the opinion evidence.

13

the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D.W. Va. Apr. 29, 2015).

Here, the ALJ's decision includes the narrative discussion required by SSR 96-8p, and contains sufficient information to allow meaningful review. Unlike the ALJ in Mascio, the ALJ in this case did not fail to consider conflicting medical evidence. Further, the court is "not left to guess about how the ALJ arrived at his conclusions" because the ALJ's findings include a detailed summary of Sherri's medical records, the medical opinions, Sherri's hearing testimony and the ALJ's conclusions.[12] R. 106–25. The RFC sets out Sherri's exertional limitations, including the amounts of weight she can lift and/or carry, amounts of time she can perform

---

[12] The ALJ remarked that the RFC is "supported by [Sherri's] treatment records, which document consistent complaints of pain and fatigue, but often showed mild findings on objective examination." R. 123.

14

activities such as standing and walking, and hazards she must avoid, as well as her mental limitations.[13]

### D. Subjective Complaints of Limitations

Sherri argues that the ALJ's assessment of her allegations regarding her limitations is not supported by substantial evidence. Specifically, Sherri complains that the ALJ did not provide adequate reasons for rejecting Sherri's allegations that she could not maintain a static work posture or interact with others, and needed to lie down during the day. Sherri also complains that the activities of daily living the ALJ referenced to support his finding that Sherri is not disabled do not actually show she is capable of completing an eight hour workday, including weeding and gardening.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims,[14] SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c).[15] First, the ALJ looks for objective medical evidence showing a condition that could reasonably

---

[13] Sherri points to a physical therapy note from 2015 indicating that Sherri was "sometimes too weak to stand for the exercise" as support for her argument. Pl.'s Br. at 34, Dkt. No. 15. However, this record also indicates that "patient reports she had flu last week, has mostly been in bed [e]verything hurts, still feels very weak" [yet] "displays fair progress." R. 1091.

[14] In March 2016, the Social Security Administration superseded the language of SSR 96-7P when it ruled in SSR 16-3P that "credibility" is not appropriate terminology to be used in determining benefits. See Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Mar. 16, 2016) (effective March 28, 2016).

[15] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

produce the alleged symptoms, such as pain.[16] Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

The ALJ's opinion includes a detailed consideration of Sherri's medical history, along with Sherri's own allegations, and the ALJ adequately supported his finding that Sherri's allegations were not entirely consistent with the record evidence. The ALJ wrote:

> [Sherri's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Sherri's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

R. 108. The ALJ noted Sherri's testimony regarding her limitations, including that she had a hard time getting along with others, and suffered from anxiety, obsessive-compulsive disorder, depression, post-traumatic stress disorder, frequent panic attacks, had difficulty concentrating, frequent pain that "came and went with no rhyme or reason," and could only stand for 15 to 30 minutes and walk for "about two minutes" before she needed to sit down, but that her tailbone hurt if she sat for more than 10 to 15 minutes. R. 106–107. The ALJ acknowledged

---

[16] SSR 16-3p states that a claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

Sherri's consistent complaints of pain and fatigue, and found that she had a number of severe impairments, but concluded she was not precluded from a limited range of light work. In support, the ALJ noted that Sherri often had mild findings on objective examination, was able to handle personal care, prepare meals, do chores, leave home by herself, use public transportation, grocery shop, and handle her finances, and she reported engaging in physical activities such as weed trimming, gardening, clearing land, and repairing her house. R. 123. The ALJ referenced, for example, instances where Sherri had "been spending a lot of time outdoors trimming high weeds with a power weed trimmer," had cleared land and built a place in the woods where she could go to meditate, and in 2016 was "working a part-time job while she waited for a decision on her disability appeal." R. 109, 118, 120, 948, 1150, 1451, 1131. The record also shows that, in 2016, she reported "completing yard work and gardening to stay busy." R. 1131.

Additionally, the ALJ noted that Sherri reported to her doctors that she was able to control her psychological symptoms using coping skills and consistently declined to take prescription medications on a daily basis. R. 123. Sherri argues that the ALJ's conclusion that she declined prescription medications is not supported by the record, and instead Sherri told her doctors she could not take any psychiatric medications because she was enrolled in a drug treatment program with the court system. Pl's. Br. at 37, Dkt. No. 15. However, the record cited by Sherri for support is from a pain management doctor treating her back and leg pain, not a mental health doctor, and states, "On her last visit with me she stated she had failed a UDS with the courts and had been entered into a drug treatment program. She emphasized that she would not like any medications from us, nor would she like to try any other interventions." R. 1375.

Sherri also points to Brown, 873 F.3d 251, to support her argument that the ALJ fails to acknowledge that the "daily activities described by [Sherri] are very limited . . . ." Pl.'s Br. at 38,

17

Dkt. No. 15. However, this case is distinguished from Brown, where the Fourth Circuit concluded that the ALJ had committed multiple errors, including failing to acknowledge the extent of the daily activities of living, writing:

> With respect to the first reason for the adverse credibility finding, the ALJ noted that Brown testified to daily activities of living that included "cooking, driving, doing laundry, collecting coins, attending church and shopping." See Second ALJ Decision 11. The ALJ did not acknowledge the extent of those activities as described by Brown, e.g., that he simply prepared meals in his microwave, could drive only short distances without significant discomfort, only occasionally did laundry and looked at coins, and, by the time of the second ALJ hearing, had discontinued regular attendance at church and limited his shopping to just thirty minutes once a week. Moreover, the ALJ provided no explanation as to how those particular activities—or any of the activities depicted by Brown—showed that he could persist through an eight-hour workday.

873 F.3d at 263. While, here, as asserted by Sherri, the ALJ did mention in his opinion some activities of daily living that arguably do not show that Sherri could "persist through an eight hour workday," unlike in Brown, the ALJ pointed to more than those daily activities to discount Sherri's testimony at the hearing, including the record of her treatment and objective medical evidence.[17] In addition to her activities of daily living, The ALJ noted that Sherri's allegations were inconsistent with her medical records, including often mild findings on objective examination, as well as the fact that she declined to take prescription medication on a daily basis preferring to use therapy skills and marijuana to control her symptoms, as well as the conclusions of the state agency doctors. Further, the ALJ may properly rely on evidence regarding a plaintiff's routine, non-work activities in rejecting a claim of disability. See Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005).

It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d

---

[17] Also, unlike in Brown, the ALJ here did not fail to consider any doctor's opinions, or wrongly credit a psychiatric medical expert's testimony over the "consistent opinions of [five] treating and examining sources" who found disabling physical limitations. Brown, 873 F.3d at 266.

635, 638 (4th Cir. 1996); see also Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that the ALJ supported his analysis of Sherri's subjective complaints with substantial evidence, and that Sherri is capable of performing work at the level stated in the ALJ's opinion.

## **CONCLUSION**

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof.  Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered: February 1, 2019

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge